FILED
2026 Sep-08 PM 03:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **SHAUN MARTIN,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No. 5:25-cv-1075-ACA** |
| | ] | |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

Plaintiff Shaun Martin appeals the decision of the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I. PROCEDURAL HISTORY

On August 17, 2022, Mr. Martin applied for supplemental security income and disability insurance benefits. (R. at 258–73). He alleged that his disability began on April 1, 2022. (*Id.* at 260, 267). The Commissioner denied his application. (*Id.* at 172–76). Mr. Martin requested reconsideration of his application, which the Commissioner again denied. (*Id.* at 181–202). Mr. Martin requested review by an Administrative Law Judge ("ALJ"). (*Id.* at 74, 209–10).

The ALJ issued an unfavorable opinion on March 27, 2025 (r. at 10–22), which Mr. Martin requested that the Appeals Council review (*id.* at 257). The Appeals Council denied his request for review. (*Id.* at 1–6). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review, [this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

"Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir.

2004) (quotation marks omitted). But despite the deferential standard of review, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (quotation marks omitted).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178. Under step four, the ALJ determines if a claimant's impairments "could reasonably be expected to produce" the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b). Then, the ALJ examines the record and "evaluate[s] the intensity and persistence" of those symptoms to determine how they limit a claimant's "capacity for work." *See id.* §§ 404.1529(c)(1), 416.929(c)(1).

Here, the ALJ determined that Mr. Martin had not engaged in substantial gainful activity since his alleged disability onset date of April 1, 2022. (R. at 13). The ALJ found that Mr. Martin's bilateral osteoarthritis of the knees, degenerative disc disease of the cervical and lumbar spine, osteoarthritis of the right great toe and bilateral hips, cirrhosis of the liver, left ventricular diastolic dysfunction, hypertension, and obesity were severe impairments, but that a femur fracture, gout, pulmonary nodules, leukocytosis,[1] sepsis, gall bladder disease, diabetes mellitus II, and arthritis of the hands were not severe. (*Id.* at 13–15). The ALJ concluded that Mr. Martin did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. (*Id.* at 16).

After considering the evidence, the ALJ determined that Mr. Martin had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he occasionally can stoop but never can kneel, crouch, or balance. The claimant should avoid all exposure to hazards such as unprotected heights and unprotected, moving, mechanical parts.

(*Id.* at 16). The ALJ explained that Mr. Martin's medically determinable impairments could reasonably be expected to cause his alleged symptoms and pain.

---

[1] "Leukocytosis" is defined as a "[a]n abnormally large number of leukocytes, as observed in acute infections, inflammation, hemorrhage, and other conditions." *Leukocytosis*, Stedman's Medical Dictionary 1075 (28th ed. 2006). A "leukocyte" is "[a] type of cell formed in the myelopoietic, lymphoid, and reticular portions on the reticuloendothelial system in various parts of the body, and normally present in those sites and in the circulating blood (rarely in other tissues)." *Leukocyte*, Stedman's Medical Dictionary 1074 (28th ed. 2006).

(R. at 17). But he concluded that Mr. Martin's statements about the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence and other evidence in the record. (*Id.*).

The ALJ found that Mr. Martin could perform past relevant work as a salesclerk. (R. at 21–22). Accordingly, the ALJ determined that Mr. Martin had not been under a disability as defined in the Social Security Act from April 1, 2022 through the date of the decision on March 27, 2025. (*Id.* at 22).

## IV. DISCUSSION

Mr. Martin argues only that the ALJ improperly evaluated the credibility of his complaints of pain. (Doc. 11 at 5–13). The Commissioner argues that substantial evidence supports the ALJ's evaluation of Mr. Martin's allegations of pain and his ultimate determination on Mr. Martin's residual functional capacity. (Doc. 12 at 5–12).

A claimant can establish disability through personal testimony about pain or other symptoms, but a claimant's statements alone are insufficient to establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). To establish disability based on testimony of pain or other subjective symptoms, a claimant must first satisfy two parts of a three-part test: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition

. . . can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). Once an ALJ identifies an underlying medical condition that could reasonably be expected to produce a claimant's subjective symptoms, the ALJ evaluates the claimant's statements about the intensity, persistence, and limiting effects of the symptoms in relation to the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(1)–(4), 416.929(c)(1)–(4). If the ALJ discredits the claimant's subjective testimony regarding his symptoms, the ALJ "must articulate explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The court will not disturb an ALJ's clearly articulated credibility finding if it is supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

At the hearing, Mr. Martin testified that he experienced severe back pain and had arthritis throughout his whole body. (R. at 85). He also noted that he needs to replace both knees. (*Id.*). He stated that he receives cortisone shots every ninety days for his knees, which helps but does not completely alleviate the pain. (*Id.* at 86). Mr. Martin asserted that he could stand for less than fourteen minutes, and he needs a cane to walk but does not use a walker often. (*Id.* at 86–88). He relayed that he spends sixty-five to seventy percent of his day lying down. (R. at 89). He

stated that on a regular basis, his pain is a five or six out of ten, but it increases to eight or nine when he stands for several minutes. (*Id.*).

After reviewing Mr. Martin's testimony, the ALJ found that his medically determinable impairments could reasonably be expected to cause his alleged symptoms. (*Id.* at 17). But the ALJ concluded that Mr. Martin's statements concerning the intensity, persistence, and limiting effect of his symptoms were not entirely consistent with the objective medical evidence and other evidence in the record. (*Id.*). Particularly, the ALJ concluded that Mr. Martin's back, knee, and hip pain were not as severe as alleged. (R. at 20–21). The ALJ noted that Mr. Martin reports relief from his knee pain with steroid injections. (*Id.* at 20). And the ALJ highlighted that despite Mr. Martin's decreased mobility in his back and lower extremities, he demonstrates good lower extremity strength, and his orthopedic specialists have not prescribed an assistive device or determined that one is necessary. (*Id.*). The ALJ also acknowledged that Mr. Martin continues to suffer from some pain that affects his ability to stand and walk, and accounted for the pain by limiting Mr. Martin's residual functional capacity to performing sedentary work with additional limitations. (*Id.* at 16–17, 21).

The ALJ's conclusions about Mr. Martin's alleged pain are supported by substantial evidence. As to the knee pain specifically, the ALJ identified a note dated April 23, 2024 from Mr. Martin's orthopedic doctor which relayed that

Mr. Martin said the injections "really help" his knee pain. (R. at 506). The same doctor again administered injections on August 28, 2024, and notes from this appointment indicate that the shots help the pain, but Mr. Martin wanted to wait three to four months before resorting to a knee replacement. (*Id.* at 830–31). Finally, Mr. Martin testified at the hearing that the cortisone shots alleviate some pain, and that despite being instructed to reschedule his knee replacement, he has not done so. (*Id.* at 86). Accordingly, the ALJ pointed to "specific reasons for discrediting [Mr. Martin's] subjective complaints of disabling pain," and thus, his conclusion is supported by substantial evidence. *Mitchell*, 771 F.3d at 782.

Additionally, the ALJ identified evidence to support his conclusion that Mr. Martin is not as limited in his movement as he alleges. The ALJ pointed to evidence from Mr. Martin's rehabilitation hospital records on May 19, 2022 which indicate that he was able to ambulate for more than 150 feet and could independently sit, stand, bathe, dress, and use the toilet. (R. at 369). Notes from a social security disability consultative examination on September 26, 2023 indicate that Mr. Martin had a steady gait with a cane or walker and he could squat, stand on his toes, and transfer on and off the examination table independently. (*Id.* at 502). Additionally, the examiner noted that his lower back pain was "better with sitting." (*Id.* at 500). Finally, after Mr. Martin received injections in his knees in April 2024, he continued complained of "some pain" in his hip and left ankle. (*Id.*

at 506). But there is no indication that this pain was severe or limited his movement. (R. at 506). This evidence of Mr. Martin's mobility and pain relief when sitting shows that the ALJ's partial rejection of Mr. Martin's allegations of severely limiting pain is supported by substantial evidence.

Mr. Martin argues that the ALJ "relied upon isolated treatment records" when determining that his allegations of pain were not fully supported. (Doc. 11 at 7–11). Particularly, Mr. Martin explains that the record is replete with evidence of arthritis in his hips continuing despite the cortisone shots in his knees, and that the cortisone shots did not significantly decrease his knee pain. (*Id.* at 9–11). But Mr. Martin points to the same evidence that the ALJ cited in its opinion—which is also the same evidence that indicates Mr. Martin's pain was at least partially alleviated by the cortisone shots. (R. at 20; *see id.* at 506–11, 825–27). Accordingly, the court must affirm the ALJ's decision. *See Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) ("[W]hen there is credible evidence on both sides of an issue it is . . . the ALJ, and not the court, who is charged with the duty to weigh the evidence and to determine the case accordingly.").

Mr. Martin also argues that the ALJ did not consider evidence in Mr. Martin's medical records which could substantiate his allegations of the intensity and persistence of the pain alleged. (Doc. 11 at 10–12). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his

decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [this court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation marks omitted; alteration accepted). Despite not discussing some of the medical evidence that may be consistent with Mr. Martin's testimony, the ALJ's recitation of the evidence of record was sufficiently thorough and accurate, and it demonstrates that he considered Mr. Martin's medical condition as a whole. (*See* r. at 16–21).

## V. CONCLUSION

Substantial evidence supports the ALJ's denial of Mr. Martin's application for disability insurance benefits and supplemental security income, and this court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate final order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 8, 2026.



**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE